[No. B198604. Second Dist., Div. Seven. Sept. 16, 2008.]

STUART BREHM IV, Plaintiff and Appellant, v.
21ST CENTURY INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Law Offices of Gene J. Goldsman, Gene J. Goldsman, Carson C. Newton; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger, Adam M. Flake; Crandall, Wade & Lowe and Victor R. Anderson III for Defendant and Respondent.

## OPINION

**PERLUSS, P. J.**—Stuart Brehm IV appeals from the order of dismissal entered after the trial court sustained without leave to amend 21st Century Insurance Company's demurrer to his second amended complaint for breach of the implied covenant of good faith and fair dealing. Brehm contends the trial court misapplied the genuine dispute rule, which protects an insurer from a bad faith claim when its denial of benefits was asserted in good faith and on reasonable grounds, and neither the express policy provision that authorizes the insurer to arbitrate uninsured motorist (UM) and underinsured motorist (UIM) claims nor Insurance Code section 11580.26, subdivision (b),[1] which bars a cause of action for exercising the right to request arbitration of a claim under an insured's UM/UIM coverage, precludes this action based on allegations 21st Century unreasonably failed to make a good faith effort to obtain a prompt, fair and equitable settlement of Brehm's claim for UIM benefits. We agree with Brehm on each of these points and, accordingly, reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Brehm's Accident and Demand for UIM Benefits*

According to the facts alleged in Brehm's second amended complaint,[2] Brehm, his father and his mother were all seriously injured in an August 2003 traffic accident caused by Natalie Aguirre, who struck the rear of the Brehm family's 1999 Chrysler Concorde while it was stopped at a red light, waiting to make a left turn. In March 2004 Brehm and his parents settled with

---

[1] Statutory references are to the Insurance Code unless otherwise indicated.

[2] We accept as true all facts properly pleaded in the second amended complaint to determine whether the demurrer should have been sustained or overruled. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373 [36 Cal.Rptr.3d 31]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637] ["[t]he reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled"]; see *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].)

Aguirre's insurance carrier for $30,000, her full policy limits; Brehm received $10,000; each of his parents also received $10,000.

In April 2004 Brehm made a written claim to 21st Century under the UIM provision of the automobile insurance policy issued by 21st Century to his parents, which covered the family's 1999 Chrysler Concorde and included Brehm as an additional insured person. The policy, in effect at the time of the August 2003 accident, provided UIM benefits of $100,000 for one person and an additional $5,000 in medical benefits. Brehm submitted medical reports and assessments, bills and diagnostic test results to 21st Century that showed, as a result of the accident with Aguirre, he had suffered among other injuries, "a severe shoulder injury that would require costly surgery and related costs and expenses."

After the parties failed to reach an agreement on Brehm's claim—the issue apparently only being the extent of his injuries and thus the amount to which he was entitled—an arbitration was scheduled for November 2004. On September 9, 2004 Brehm made a statutory demand for $85,000 plus medical payments pursuant to Code of Civil Procedure section 998. 21st Century rejected the demand on October 27, 2004 and made a counteroffer of $5,000 plus previously paid medical benefits. In rejecting Brehm's demand, 21st Century stated its position, based on an evaluation conducted by its medical expert, Dr. Joseph S. Swickard, was that Brehm's injuries were limited to soft tissue and the surgeries recommended by Brehm's medical provider (Dr. Hafezi) "are not necessary." In his report Dr. Swickard asserted Brehm had only "subjective complaints with no objective evidence of injury or problem."

To persuade 21st Century to pay a reasonable settlement, in mid-October 2004 Brehm submitted to "a truly independent medical examination" by a highly credentialed board-certified orthopedic surgeon, Dr. Ronald Glousman. Dr. Glousman's report, provided to 21st Century on November 10, 2004, paired common stated Brehm had suffered a cervical strain, lumbar strain and right shoulder rotator cuff strain. Dr. Glousman opined Brehm needed further treatment and concluded it was "more likely than not" that surgery would be required on his right shoulder. Dr. Glousman estimated the surgery would cost $15,575 and postsurgical physiotherapy approximately $3,600.

Following a continuance of the November 2004 arbitration date to allow 21st Century to subpoena and review Dr. Glousman's records, Brehm made a $90,000 policy limit demand ($100,000 less the $10,000 Brehm had recovered from Aguirre), plus $5,000 in medical payments. In response 21st Century offered $5,000 plus the balance of the full policy maximum of $5,000 in medical payments. Brehm rejected the counteroffer. On March 26,

2005 Brehm received an arbitration award of $91,186; the award was reduced by stipulation to the $90,000 policy limit. 21st Century paid Brehm the $90,000 shortly after the award was made.

### 2. *Brehm's Lawsuit for Breach of the Implied Covenant of Good Faith*

Brehm filed a complaint against 21st Century on January 31, 2006 and, after the court sustained a demurrer, a first amended complaint on July 24, 2006, asserting causes of action for breach of the implied covenant of good faith and fair dealing and breach of contract, alleging 21st Century had unreasonably failed to make a good faith effort to resolve Brehm's UIM claim after its liability for payment of benefits was clear. On November 7, 2006 the trial court sustained 21st Century's demurrer to the first amended complaint with leave to amend, suggesting at the hearing that Brehm needed to plead a sufficient factual basis for asserting the failure to settle his UIM claim was the result of something more than a genuine dispute between the parties as to the amount of damages to which he was entitled.

On November 14, 2006 Brehm filed his second amended complaint for breach of the implied covenant of good faith and fair dealing, breach of contract and fraud. In addition to the factual allegations described above, Brehm alleged the medical evidence in 21st Century's possession at the time it rejected Brehm's policy limit demand and made a $5,000 counteroffer showed its offer was "extremely unrealistic"; 21st Century knew from the information it had received Brehm was entitled to the full policy limits based on the injuries sustained in the accident with Aguirre and also knew any fair arbitration would likely award that sum to Brehm. Nonetheless, 21st Century made an unreasonably low offer to delay paying his legitimate claim and in the hope of compelling him to accept less than the full amount he was due. Brehm further alleged Dr. Swickard, a nonpracticing professional expert witness, was known to the insurance industry to be biased in favor of the defense and was retained, not to objectively and fairly evaluate Brehm's shoulder injury, but with the intent that he minimize its seriousness to make it appear—falsely—there was a genuine dispute about the extent of that injury. Indeed, contrary to Dr. Swickard's conclusion regarding "subjective complaints with no objective evidence of injury or problem," his report actually noted Brehm had demonstrated restricted motion and "occasional crepitus [a grating or crackling feeling or sound] in the right shoulder that was not present on the left." Yet Dr. Swickard and 21st Century deliberately ignored these facts in order to deprive Brehm of his contractual rights.

### 3. *The Trial Court's Ruling Sustaining the Demurrer Without Leave to Amend*

21st Century demurred to the second amended complaint, insisting Brehm had simply alleged "a classic 'genuine dispute' as to the value of a UIM claim" and arguing under *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347 [108 Cal.Rptr.2d 776] (*Chateau Chamberay*) an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the amount of the claim cannot be liable in bad faith. Because 21st Century had relied upon the opinion of its expert to evaluate Brehm's UIM claim, its offer of an additional $5,000 was reasonable as a matter of law—notwithstanding the fact the arbitrator ultimately agreed with Brehm's expert, not 21st Century's. 21st Century also argued it had a right under the policy's express terms to submit to arbitration its dispute with Brehm concerning the damages due on his UIM claim.[3] In opposition Brehm argued the genuine dispute rule should not apply at the pleading stage of a case and, in any event, was inapplicable when an insurer selects its expert dishonestly or the expert performs unreasonably, as alleged in the second amended complaint.

The trial court sustained the demurrer without leave to amend in an order that incorporated its written tentative ruling. The court found 21st Century had a contractual right to challenge the amount of loss claimed under its UIM coverage and to submit any dispute with its insured over UIM damages to arbitration. Accordingly, Brehm could not argue 21st Century had breached the contract as a result of properly exercising its rights under the contract. The court further ruled a breach of the covenant of good faith and fair dealing "necessarily requires that there be a breach of the underlying insurance contract." Accordingly, because the court had concluded the breach of contract cause of action was without merit, the claim for breach of the implied covenant necessarily failed as well. Quoting from *Chateau Chamberay, supra*, 90 Cal.App.4th at page 347, that "there can be no bad faith liability imposed on the insurer for advancing its side of [a genuine] dispute," the trial court also ruled the second amended complaint contained insufficient factual allegations that 21st Century's actions "were done for any malicious reason other than 'advancing its side of that dispute.'"

The court's February 14, 2007 minute order sustaining 21st Century's demurrer without leave to amend also states, "[o]n oral motion of Defendant . . . [p]ursuant to Section 581(f)(1) of the California Code of Civil

---

[3] 21st Century argued the fraud cause of action—which had been added to the second amended complaint—was not pleaded with the requisite specificity. The trial court sustained 21st Century's demurrer to this cause of action. On appeal Brehm has abandoned any contention the trial court erred in dismissing the fraud claim.

Procedure the above-entitled case is hereby ordered dismissed."[4] The minute order is signed by the court (or at least stamped with a replica of the trial judge's signature), making it an appealable order under Code of Civil Procedure section 581d.[5] Brehm filed a timely notice of appeal.

## CONTENTIONS

Insisting his second amended complaint properly pleaded a cause of action for breach of the implied covenant of good faith and fair dealing,[6] Brehm contends the trial court erred in concluding a claim for insurance bad faith requires the insured to separately allege a breach of an express term of the policy and misapplied the genuine dispute rule of *Chateau Chamberay, supra,* 90 Cal.App.4th 335 to his claim, which alleges the insurer dishonestly selected its expert, who then deliberately failed to conduct a fair evaluation of Brehm's medical condition. Brehm also contends neither 21st Century's contractual right to compel arbitration of an unresolved UM/UIM claim nor section 11580.26, subdivision (b), which bars a cause of action for exercising the right to request arbitration of such a claim, precludes a bad faith action based on the insurer's improper, prearbitration handling of the claim.

---

[4] At the hearing on the demurrer, the court stated, "The ruling [sustaining the demurrer without leave to amend] stands, and the tentative will become the final and made part of the file." Counsel for 21st Century responded, "Thank you, Your Honor. I'll prepare a judgment." The clerk then inquired, "Can I dismiss it pursuant to 581(f)(2), which provides for it?" The court replied, "Yes. The matter will be dismissed pursuant to CCP section 581(f)(2) or 581 et seq., the applicable code provisions."

[5] We understand, informally, it is not an unusual practice in the Los Angeles Superior Court for the clerk to stamp a minute order dismissing an action with the judge's signature, sometimes below the statement "it is so ordered," to satisfy the requirements of Code of Civil Procedure section 581d ("All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . ."). While this practice arguably complies with the literal requirements of section 581d, it does little to further the rationale for requiring final orders of dismissal to be accomplished by written, signed court order rather than by minute order.

Asked by the court to be prepared to address at oral argument whether a dismissal had been entered that complies with the requirements of Code of Civil Procedure section 581d, counsel for Brehm obtained a new order of dismissal, actually signed by the court and dated September 3, 2008 (two days prior to oral argument), but effective February 14, 2007 on a nunc pro tunc basis. Although we were prepared, albeit reluctantly, to conclude the February 14, 2007 minute order itself was "in the form of a written order" and "signed by the court," the September 3, 2008 order eliminates any question whether there is an appealable final order in this case. We encourage trial courts to avoid this issue in the future by using a separate written order of dismissal, signed by the court and filed in the action, to conclude a case, rather than relying on a signed or stamped minute order.

[6] On appeal Brehm does not argue his separate cause of action for breach of contract was improperly dismissed by the trial court.

## DISCUSSION

### 1. *Standard of Review*

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry,* at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].)

### 2. *Breach of an Express Contract Term Is Not a Prerequisite to Maintaining an Action for Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ California law recognizes in every contract, including insurance policies, an implied covenant of good faith and fair dealing. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082] (*Wilson*); *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032].) In the insurance context the implied covenant requires the insurer to refrain from injuring its insured's right to receive the benefits of the insurance agreement. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

■ As a general rule, as the trial court recognized, there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy: "[T]he covenant is based on the contractual relationship between the insured and the insurer. . . . Absent that contractual right [to policy benefits], the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' " (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 36; see *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246].) However, as this court held in *Schwartz v. State*

*Farm Fire & Casualty Co.* (2001) 88 Cal.App.4th 1329 [106 Cal.Rptr.2d 523], the principle that no breach of the covenant of good faith and fair dealing can occur if there is no coverage or potential for coverage under the policy is quite different from the argument that no breach of the implied covenant can occur if there is no breach of an express contractual provision: "[B]reach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. . . . [E]ven an insurer that pays the full limits of its policy may be liable for breach of the implied covenant, if improper claims handling causes detriment to the insured." (*Schwartz,* at p. 1339; accord, *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373 [6 Cal.Rptr.2d 467, 826 P.2d 710] ["breach of a specific provision of the contract is not a necessary prerequisite" to an action for breach of the implied covenant of good faith; "[w]ere it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract"]; see also *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395 [272 Cal.Rptr. 387] [allegations of breach of the implied covenant of good faith and fair dealing "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities"].)

■ Thus, in *Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th 1, in language particularly apt to the case at bar in light of Brehm's allegations of improper conduct by 21st Century, the Supreme Court explained an insurer's obligations extend beyond simply paying the benefits to which its insured is entitled: "[W]hen benefits are due an insured, 'delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because' they frustrate the insured's right to receive the benefits of the contract in 'prompt compensation for losses.' " (*Waller,* at p. 36; see *Wilson, supra,* 42 Cal.4th at p. 720 [" '[w]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort' "]; *Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 573 [under implied covenant of good faith and fair dealing insurer owes its insured a duty "not to withhold unreasonably payments due under a policy"].) Similarly, the Supreme Court in *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198], held the implied covenant of good faith and fair dealing "requires the insurer to settle in an appropriate case although the express terms of the policy do not impose such a duty." Breach of the implied obligation to accept a reasonable offer to settle a claim against its insured exposes the insurer to liability in both contract and tort, regardless of its fulfillment of the express terms of the insurance policy. (See *Johansen v. California State Auto. Assn. Inter-Ins.*

*Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744]; *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 463–466 [64 Cal.Rptr.3d 632] [although record reflects insurer fully performed express contractual promises made in its policy—to defend its insured and to pay the full policy limit on account of the judgment entered in the underlying action—summary judgment improperly entered on claim insurer breached its implied obligation to accept a reasonable settlement offer].)

21st Century essentially concedes the trial court erred in sustaining its demurrer on this ground, acknowledging "a cause of action may lie for breach of an implied covenant in the absence of an express breach of contract." Instead, it urges alternative grounds for affirming the trial court's order (cf. *D'Amico v. Bd. of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10] ["ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"]), including the argument, discussed in part 4., below, that "no cause of action will lie for breach of an implied covenant that is expressly contradicted by the terms of the contract."

> 3. *The Genuine Dispute Rule Does Not Protect an Insurer Whose*
> *Position Is Not Maintained in Good Faith and on Reasonable*
> *Grounds*

■ A delay in payment of benefits due under an insurance policy gives rise to tort liability only if the insured can establish the delay was unreasonable. (*Wilson, supra*, 42 Cal.4th at p. 723; *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214–215 [228 Cal.Rptr. 160, 721 P.2d 41].) "As a close corollary of that principle, it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.' " (*Wilson,* at p. 723, quoting *Chateau Chamberay, supra*, 90 Cal.App.4th at p. 347.) Relying on *Chateau Chamberay*, the trial court accepted 21st Century's argument that the second amended complaint merely alleged a genuine dispute between Brehm and his medical experts, on the one hand, and 21st Century and its medical expert, on the other hand, and thus was insufficient to state a cause of action for breach of the implied covenant.

21st Century attempts to support the trial court's ruling sustaining its demurrer on this ground, first, by reviewing case law holding bad faith liability cannot be predicated on the insurer's mistake or even negligence (see, e.g., *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229], criticized on another ground in

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184 [83 Cal.Rptr.2d 548, 973 P.2d 527] [plaintiff must establish insurer's denial or delay in paying benefits was " 'prompted not by an honest mistake, bad judgment or negligence *but rather by a conscious and deliberate act*' "]; *Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1293 [97 Cal.Rptr.2d 386] ["[w]here the parties rely on expert opinions, even a substantial disparity in estimates [of the value of the insured's claim] does not, by itself, suggest the insurer acted in bad faith"]); and, then, by emphasizing its settlement offer of $5,000 plus the remaining sum available under the medical payment limits, together with the $10,000 Brehm received from Aguirre's carrier, would have given Brehm essentially the sum his expert had opined was needed for shoulder surgery and postoperation physiotherapy ($19,175). Thus, whether viewed from the perspective of its own medical expert, Dr. Swickard, who had opined there was no need for surgery and no objective evidence of any injury or problem at all, or Brehm's expert, Dr. Glousman, 21st Century's prearbitration position was, as a matter of law, objectively reasonable or, at the very least, the product of a good faith dispute as to the value of Brehm's claim. Finally, 21st Century insists, because its settlement offer was objectively reasonable, Brehm's allegations about its subjective intent in hiring Dr. Swickard to evaluate Brehm's medical condition are irrelevant. (See *CalFarm Ins. Co. v. Krusiewicz* (2005) 131 Cal.App.4th 273, 287 [31 Cal.Rptr.3d 619] ["[i]f the conduct of the insurer in denying coverage was objectively reasonable, its subjective intent is irrelevant"]; but see *Wilson, supra*, 42 Cal.4th at p. 724 ["an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues [citation] as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith"].)

■ 21st Century's summary of the governing case law fails to acknowledge an important limitation on the genuine dispute rule or to recognize the significance of the trial court's dismissal of Brehm's bad faith claim while it was still at the pleading stage. In *Wilson, supra*, 42 Cal.4th 713 the Supreme Court emphasized the genuine dispute rule cannot be invoked to protect an insurer's denial or delay in payment of benefits unless the insurer's position was both reasonable and reached in good faith: "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." (*Id.* at p. 723; see *id.* at p. 724, fn. 7 ["[i]n the insurance bad faith context, a dispute is not 'legitimate' unless it is founded on a basis that is reasonable under all the circumstances"].) The *Wilson* decision, moreover, simply confirms the caution voiced by Division Three of this court

in *Chateau Chamberay, supra*, 90 Cal.App.4th at page 348, that "an expert's testimony will not *automatically* insulate an insurer from a bad faith claim based on a biased investigation."

In *Wilson, supra*, 42 Cal.4th 713 the Supreme Court affirmed this court's judgment reversing the trial court's grant of summary judgment to 21st Century, holding plaintiff Reagan Wilson had demonstrated a triable issue of fact as to whether 21st Century's decision to deny her UIM claim was made unreasonably and in bad faith. (*Id.* at p. 721.) Although 21st Century ultimately paid its full policy limits on Wilson's UIM claim—while arbitration proceedings were pending—Wilson sued for breach of the implied covenant of good faith and fair dealing alleging 21st Century's initial denial of benefits had not been made in good faith and the resulting two-year delay until the claim was paid caused her damage (lost interest, attorney fees and costs and emotional distress). Wilson had submitted medical evidence to 21st Century indicating she had suffered a neck injury due to her recent automobile accident with an underinsured motorist. Without contacting Wilson's orthopedist, having its own physician review the submitted medical records or arranging for Wilson to be examined by another physician, 21st Century's claims examiner denied the claim on the ground, "Wilson's pain was due only to 'soft tissue injury superimposed by a preexisting degenerative disc disease.'" (*Ibid.*) Although the Supreme Court acknowledged that in some cases "review of the insured's submitted medical records might reveal an indisputably reasonable basis to deny the claim without further investigation" (*id.* at p. 723), reviewing the summary judgment record before it, the court concluded a jury could reasonably find that nothing in the material the claims examiner had received justified his conclusions: "[U]nder the facts of this case a triable issue of fact exists as to whether it was reasonable to deny Wilson's claim on the grounds stated without further medical investigation." (*Ibid.*; see *id.* at p. 726 ["[t]he summary judgment record demonstrates the existence of triable issues of fact as to whether, before rejecting Wilson's UIM claim in July 2001, 21st Century thoroughly investigated and fairly evaluated the claim"].)

■ *Wilson* is distinguishable from the case at bar, of course, because 21st Century did have Brehm examined by Dr. Swickard following Brehm's submission of his medical information and it was Dr. Swickard, not a claims examiner, who asserted Brehm did not need surgery and had only "subjective complaints with no objective evidence of injury or problem." But Brehm has alleged that Dr. Swickard's examination was a sham; that he was retained by 21st Century with the intention he prepare a report that falsely minimized the seriousness of Brehm's injury precisely so that 21st Century could argue there was a "genuine dispute" as to the value of the claim; and that Dr. Swickard did exactly as he was expected to do. Although his examination revealed restricted motion and "occasional crepitus in the right shoulder,"

Dr. Swickard allegedly ignored those objective facts—as well as the medical evidence submitted by Brehm—and concluded without any factual basis Brehm had not suffered any significant shoulder injury in the automobile accident and would not require future surgery. Although we may entertain some skepticism as to the nature of the competent and credible proof Brehm will be able to offer in support of these allegations, the issue before us is not whether his evidence will be sufficient but whether his allegations of intentional misconduct and bad faith are. Under *Wilson, supra,* 42 Cal.4th 713 and *Chateau Chamberay, supra,* 90 Cal.App.4th 335, the answer to that limited question, inescapably, is yes. (See *Wilson,* at p. 723 [genuine dispute rule does not protect insurer who fails to fairly investigate and evaluate its insured's claim]; *Chateau Chamberay,* at p. 348 [insured's biased investigation claim should go to jury when insurer's experts were unreasonable].)

■ Brehm's bad faith claim also differs from Wilson's because 21st Century did not deny his UIM claim. Indeed, 21st Century asserts its relatively modest offer of $5,000 plus remaining medical benefits (totaling something less than $10,000), although much lower than the ultimate arbitration award, was sufficient to cover the projected medical expenses identified by Dr. Glousman and, therefore, could not have been made in bad faith as a matter of law. Brehm's second amended complaint, however, alleges the amount offered by 21st Century was unreasonably low in light of the medical evidence in its possession at that time. Moreover, Brehm notes that, even if 21st Century's offer, together with the Aguirre settlement, would cover future medical expenses as estimated by Dr. Glousman, it provided nothing at all for past expenses, lost earnings or pain and suffering, all items recoverable in an action against Aguirre and, therefore, covered by the UIM provisions of his parents' policy. The reasonableness of 21st Century's settlement counteroffer at the time it was made is simply not a question that can be resolved at the pleading stage.[7] (See *Shade Foods, Inc. v. Innovative Products Sales &*

---

[7] In *Rappaport-Scott v. Interinsurance Exchange of the Automobile Club* (2007) 146 Cal.App.4th 831, 839 [53 Cal.Rptr.3d 245], the plaintiff claimed losses totaling $346,732.34 and sought UIM policy benefits in the full amount of the $100,000 policy limit (reduced by the $25,000 she had received in settlement from the underinsured driver). Her insurer offered to pay $7,000 on the claim. The arbitrator determined the plaintiff's actual losses were $63,000. Division Three of this court held, in affirming the trial court's dismissal of the complaint after sustaining a demurrer without leave to amend, "the vast difference between the $346,732.34 in losses claimed by Rappaport-Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, *as a matter of law,* that a genuine dispute existed as to the amount payable on the claim." (*Ibid.*) Here, in contrast, the arbitrator awarded Brehm an amount in excess of the $90,000 policy limits he demanded. Accordingly, although the record may ultimately demonstrate the absence of triable issues as to whether 21st Century's $5,000 offer was made in good faith following a thorough and fair evaluation of Brehm's claim, we cannot hold at this point, as a matter of law, that a genuine dispute existed as to the amount payable on the claim. (Cf. *Wilson, supra,* 42 Cal.4th at pp. 723–724 & fn. 7.)

*Marketing, Inc.* (2000) 78 Cal.App.4th 847, 888 [93 Cal.Rptr.2d 364] ["[o]r-dinarily, the question whether the insurer has acted unreasonably in respond-ing to a settlement offer is a question of fact to be determined by the jury"]; *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1454 [7 Cal.Rptr.2d 513] [same].)[8]

### 4. *21st Century's Contractual Right to Arbitrate UIM Claims Does Not Relieve It from Its Obligation to Deal with Its Insured in Good Faith*

The 21st Century policy expressly grants the parties the right to arbitrate any dispute regarding a UM or UIM claim: "If we and a *person* insured do not agree as to whether he or she is legally entitled to recover damages from an Uninsured Motorist or the amount of such damages, then upon written demand of either, the disagreement shall be submitted to a single neutral Arbitrator for decision in accordance with the law of California." In sustain-ing the demurrer to Brehm's now abandoned breach of contract claim, the trial court, after quoting this provision, ruled, "[P]er the foregoing, Defendant properly exercised its rights under the contract since the contract specifically notes that in the event of a dispute between the parties re: damages, such damages shall be determined by an arbitrator. That is exactly what happened per the contract."

Echoing this conclusion, 21st Century posits a simple syllogism: It had a contractual right to arbitrate Brehm's UIM claim. The implied covenant of good faith and fair dealing cannot prohibit a contracting party from doing that which is expressly permitted by the agreement itself (here, the insurance policy). (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., supra,* 2 Cal.4th at p. 374 [" 'As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.' "]; see *Tanner v. Title Ins. & Trust Co.* (1942) 20 Cal.2d 814, 824 [129 P.2d 383]; see also *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120 [76 Cal.Rptr.3d 585].) Accord-ingly, its decision to seek arbitration cannot possibly constitute a breach of the implied covenant of good faith and fair dealing.

---

[8] Although the question whether an insurer failed to accept a reasonable settlement offer within policy limits of a third party claim against its insured is analytically distinct from the question whether an insurer unreasonably withheld benefits due under the policy in a first party coverage context (see, e.g., *Rappaport-Scott v. Interinsurance Exchange of the Automobile Club, supra,* 146 Cal.App.4th at pp. 836–837), both turn on the reasonableness of the insurer's position, which is ordinarily an issue to be determined by the trier of fact. (See *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1076–1077 [56 Cal.Rptr.3d 312]; see generally *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1063 [232 Cal.Rptr. 528, 728 P.2d 1163].)

21st Century's deceptively simple analysis fundamentally misconceives the relevant inquiry. The issue is not whether, having failed to reach an agreement with Brehm as to the extent of his injuries and, therefore, the value of his UIM claim, 21st Century had an absolute right to demand arbitration—it did—but whether 21st Century had an implied obligation to honestly assess Brehm's claim and to make a reasonable effort to resolve any dispute with him as to the amount of his damages before invoking that right. An insurer's duty to thoroughly investigate and fairly evaluate its insured's UIM claim, so forcefully recognized in *Wilson, supra,* 42 Cal.4th at pages 720 to 723, has no meaning unless the answer to that question is yes. (See *Rappaport-Scott v. Interinsurance Exchange of the Automobile Club, supra,* 146 Cal.App.4th at p. 838 [although insurer is not necessarily obligated to accept its insured's reasonable settlement offer, it has duty to act reasonably regarding the payment of first party benefits due under the UIM provision of its policy].)

■ Indeed, by making lack of agreement as to the value of the claim an express precondition to demanding arbitration, the policy itself contemplates the parties will first make an affirmative effort to resolve their dispute, in effect creating a contractual duty to discuss the claim to which the implied covenant of good faith and fair dealing properly attaches. The implied covenant imposes on a contracting party not only a duty to refrain from acting in a manner that frustrates performance of the contract " 'but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " (*Pasadena Live v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1093 [8 Cal.Rptr.3d 233] [theatre company's agreement to pay for renovation of city-owned facility, with payments to be credited against license fees for use of facility in future, contemplated theatre company would submit applications for approval of events; city's refusal to consider such events supports claim for breach of implied covenant of good faith and fair dealing]; see *Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 405 [55 Cal.Rptr. 1, 420 P.2d 713] [contract provision permitting change orders subject to " 'an equitable adjustment in price and time of performance *mutually satisfactory* to Buyer and Seller' " necessarily implied an obligation to discuss the matters and negotiate in good faith based on implied covenant of good faith and fair dealing]; cf. *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1260 [117 Cal.Rptr.2d 875] [parties may enter into a binding contract to negotiate an agreement; "when the parties are under a contractual compulsion to negotiate . . . the covenant of good faith and fair dealing attach[es], as it does in every contract"].) 21st Century's express contractual right to resolve any remaining disputes by arbitration is not inconsistent with its implied obligation to attempt in good faith to reach agreement with its insured prior to arbitration.

5. *Insurance Code Section 11580.26, Subdivision (b), Does Not Immunize an Insurer from Tort Liability for Bad Faith Handling of a UIM Claim*

 The contractual provision for arbitration of UM and UIM claims disputes in 21st Century's policy is mandated by the statutory scheme requiring UM and UIM coverage. Section 11580.2, subdivision (a), originally enacted in 1959 (Stats. 1959, ch. 817, § 1, pp. 2835–2836), requires all automobile insurance liability policies to include coverage for bodily injury or wrongful death caused by a collision with an uninsured or underinsured motorist. (See *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 341 [79 Cal.Rptr.2d 308, 965 P.2d 1178].) Section 11580.2, subdivision (f), provides, "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration."

In 1983 the Legislature expanded the scope of mandatory UM and UIM coverage by adding section 11580.26 to the Insurance Code, requiring insurers to offer coverage for property damage caused by uninsured or underinsured motorists to policyholders without collision coverage (§ 11580.26, subd. (a)(2)) and to offer additional ("first dollar") coverage that would waive the deductible on collision insurance when the insured has been struck by an uninsured or underinsured motorist (§ 11580.26, subd. (a)(1)). (See Stats. 1983, ch. 1252, § 1, p. 4938.)[9] As originally enacted, section 11580.26, subdivision (b), provided for payment of UM and UIM claims under the new property damages provisions in subdivision (a)(1) and (2) when the insured satisfied certain reporting requirements and "it is determined by the insured and insurer or, in the event of disagreement, by arbitration . . . that the insured is legally entitled to recover the amount of such payments for property damage from the owner or operator of the uninsured motor vehicle."[10] The following sentence provided, "No cause of action shall exist against either an insured or insurer from exercising the right to request arbitration of a claim under this section or Section 11580.2."

---

[9] The legislation (Sen. Bill No. 808, approved by Governor, Sept. 30, 1983, Sen. Final Hist. (1983–1984 Reg. Sess.) p. 504) also provided any judgment or settlement obtained by an uninsured motorist would be reduced by the amount paid to the insured motorist under his or her UM/UIM coverage and further mandated a one-year suspension of an uninsured motorist's driver's license if the motorist was involved in an accident causing bodily injury or property damage in excess of $500 and could not respond in damages.

[10] Minor stylistic amendments were made in 1984 (see Stats. 1984, ch. 263, § 1, p. 1295; Stats. 1984, ch. 1196, § 1, p. 4109), but substantively the provision is unchanged.

 Describing this second sentence of section 11580.26, subdivision (b)—which has not been modified since its adoption in 1983—as a grant of complete immunity for its decision to arbitrate Brehm's UIM claim, 21st Century argues Brehm's cause of action for breach of the implied covenant and good faith necessarily fails. A similar argument was considered and rejected by Division Three of this court in *Hightower v. Farmers Ins. Exchange* (1995) 38 Cal.App.4th 853, 863 [45 Cal.Rptr.2d 348]: "Under Farmers's interpretation of the statute, an insurer could 'stonewall' uninsured motorist claimants in every case but avoid bad faith liability through the simple act of requesting arbitration and refusing to pay until ordered to do so by an arbitrator. We cannot ascribe such an intent to the Legislature. [¶] . . . Giving Insurance Code section 11580.26, subdivision (b) a reasonable interpretation, one which does not fly in the face of statutory and decisional law concerning an insurer's duties [citations], the enactment simply declares that the bare act of requesting arbitration of an uninsured motorist claim, without more, is not actionable. [¶] . . . Where there is no issue reasonably to be resolved by arbitration . . . the failure to attempt to effectuate a prompt and fair settlement violates the insurer's statutory duties [citation] and gives rise to tort liability. Similarly, an insurer cannot shield other dilatory conduct, such as failing to investigate a claim, by the mere act of requesting uninsured motorist arbitration."[11]

Despite the fact *Hightower v. Farmers Ins. Exchange, supra,* 38 Cal.App.4th 853 has not been questioned by any appellate court in the 13 years since it was decided, 21st Century insists it is wrong[12] and urges us to read section 11580.26, subdivision (b), as creating a broad rule of immunity that permits an insurer to avoid bad faith liability arising from its prearbitration handling of a UM or UIM claim simply by requesting arbitration. Section 11580.26, according to 21st Century, "bars any cause of action based on a party's decision—reasonable or not—to exercise its statutory right to arbitration. The Legislature provided this blanket immunity as a way to ensure the continuing viability of the unique mandatory arbitration scheme" contained in the UM/UIM statute. By limiting section 11580.26, subdivision (b), to "reasonable" requests for arbitration by an insurer, 21st Century argues,

---

[11] The policyholder in *Hightower v. Farmers Ins. Exchange, supra,* 38 Cal.App.4th 853, injured in an accident with an uninsured motorist, alleged her insurer had refused her demand to pay the UM policy limits even though its liability was clear and had delayed paying the benefits due under the policy until " 'ordered to do so by an arbitrator.' " (*Id.* at p. 857.) The Court of Appeal reversed the trial court's order granting the insurer's motion for judgment on the pleadings and remanded with directions to grant the policyholder leave to amend her complaint to plead facts upon which she based her allegation the insurer's failure to pay the claim earlier and its insistence on arbitration were unreasonable. (*Id.* at p. 864.)

[12] 21st Century raised the same argument before the Supreme Court in *Wilson, supra,* 42 Cal.4th 713. The Supreme Court declined to address the issue because 21st Century had not timely raised the issue in this court. (*Id.* at p. 726; see Cal. Rules of Court, rule 8.500(c)(1).)

*Hightower* ignores both the plain language of the statute and the obvious intent of the Legislature, impermissibly reads into the section an exception where none exists and renders its protection meaningless because, even without it, a reasonable request for arbitration is not actionable.

 We, of course, agree with 21st Century that the fundamental task of statutory interpretation is to determine the Legislature's intent so as to effectuate the purpose of the law. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882]; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].) "We begin with the statutory language because it is generally the most reliable indication of legislative intent." (*Miklosy*, at p. 888.) But " '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; see *Wedemeyer v. Safeco Ins. Co. of America* (2008) 160 Cal.App.4th 1297, 1305 [73 Cal.Rptr.3d 415] ["[w]e must give the statute a reasonable interpretation, avoiding, if possible, a literal interpretation which will lead to an absurd result"].) Moreover, "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*Pieters*, at p. 899; see *Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118 [80 Cal.Rptr.3d 326] ["[w]e presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules"].)

The primary flaw in 21st Century's narrow and literal reading of the second sentence of section 11580.26, subdivision (b), is that it disregards the preceding sentence of the subdivision concerning arbitration of collision damage claims in UM/UIM cases, as well as the comparable mandatory arbitration language in section 11580.2, subdivision (f). Neither provision grants the insurer the unfettered right to demand arbitration as soon as a UM/UIM claim is filed; both obligate the insurer to attempt to reach an agreement with its insured before it may invoke arbitration as a means of resolving any disagreement. Section 11580.2, subdivision (f), requires any questions concerning liability or the amount of damages to be decided "by agreement between the insured and the insurer"; only "in the event of disagreement" may the dispute be resolved by arbitration. Similarly, under section 11580.26, subdivision (b), arbitration is available "in the event of disagreement" between the insurer and the insured as to whether the insured is legally entitled to recover the property damages sought. This duty to attempt to agree before arbitrating, clearly imposed by the Legislature, invokes a corresponding duty to do so in good faith. (*Wilson, supra*, 42 Cal.4th at p. 720; *Frommoethelydo v. Fire Ins. Exchange, supra*, 42 Cal.3d at p. 215;

see § 790.03, subd. (h)(5) [unfair business practice for insurer not to attempt in good faith "to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"].)

But, 21st Century protests, if it faces potential tort liability for acting unreasonably regarding the payment of UM and UIM benefits due under its policies—that is, for failing to conduct a thorough investigation or fair evaluation of its insured's claim before denying it and proceeding to arbitration—then section 11580.26, subdivision (b)'s language that no cause of action shall exist "from exercising the right to request arbitration" provides no protection at all, impermissibly rendering the statute "nugatory, inoperative and meaningless." 21st Century's concern that our agreement with the analysis and conclusion in *Hightower v. Farmers Ins. Exchange, supra*, 38 Cal.App.4th 853 will frustrate the Legislature's scheme for resolving UM and UIM disputes is misplaced.

 As 21st Century suggests, although the legislative history is silent on this point, it is plausible the second sentence in section 11580.26, subdivision (b), was enacted in response to the Supreme Court's landmark decision five years earlier in *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980] (*Neal*).[13] In a five-to-two decision the court in *Neal* affirmed an award of compensatory damages (approximately $10,000) and punitive damages (approximately $750,000) against an insurer for its bad faith refusal to pay its insured, by way of settlement, the full UM benefits to which she was entitled under her policy, finding "abundant evidence, a good deal of it conflicting, on the subject of defendant's conduct and motives" in delaying payment, through completion of arbitration, as part of a "conscious course of conduct, firmly grounded in established company policy, designed to utilize the lamentable circumstances in which Mrs. Neal and her family found themselves, and the exigent financial situation resulting from it, as a lever to force a settlement more favorable to the company than the facts would otherwise have warranted." (*Id.* at pp. 921, 923, fn. omitted.) Writing for the court, Justice Manuel reiterated that the duty of an insurer to accept reasonable settlements of third party claims *against* its insured is but one aspect of its obligation "to act fairly and in good faith in discharging its contractual responsibilities to its insured. Another aspect of that obligation . . . is the duty of the insurer to act fairly and in good faith in handling claims submitted *by* its insured, which we [have] characterized as 'a duty not

---

[13] Strikingly, there is no discussion of the second sentence of section 11580.26, subdivision (b), in any of the legislative history we have found regarding Senate Bill No. 808 (1983–1984 Reg. Sess.), which was enacted as chapter 1252, Statutes 1983. It is not mentioned in the Legislative Counsel's Digest in any version of the bill, nor is it addressed in the analyses or summaries of the bill or its amendments prepared by the Legislative Analyst, the Senate Committee on Insurance, Claims, and Corporations, the Assembly Committee on Finance and Insurance, the Assembly Committee on Ways and Means or the Assembly Office of Research.

to withhold unreasonably payments due under a policy.' [Citation.] . . . [W]hen an insurer 'fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' " (*Id.* at p. 920.)

Justice Richardson in his dissenting opinion explained the insurer had offered its insured, Mrs. Neal, a 50 percent settlement, in contrast to her demand for full UM benefits, and stated, in his view, the question of bad faith was "very close" based on the serious question whether there was any negligence on the part of the uninsured motorist and, therefore, whether Mrs. Neal, who had been severely injured, was entitled to any payment at all under the general UM coverage. (*Neal, supra,* 21 Cal.3d at p. 935 (dis. opn. of Richardson, J.).) Justice Richardson also objected to the analysis by which the punitive damage award was justified by the majority, but did not question the basic legal principles described by the majority concerning the insurer's duties to act in good faith in handling a first party UM claim: "If the uninsured motorist carrier has acted unreasonably, damages, including punitive damages, are entirely proper . . . ." (*Id.* at p. 941 (dis. opn. of Richardson, J.).) Justice Clark concurred in Justice Richardson's dissenting opinion but wrote separately to comment that "[t]he majority's holding, that a first party insurer may not 'guess wrong,' effectively abolishes the present statutory scheme for handling uninsured motorist claims. We may anticipate arbitration, pursuant to Insurance Code section 11580.2, will no longer be used to resolve these disputes because the penalty for losing in arbitration will be an automatic second proceeding in superior court for 'bad faith' breach of the insurance policy. Thus, all claims must necessarily be paid regardless of how frivolous." (*Id.* at p. 942 (dis. opn. of Clark, J.).)

In adopting the "[n]o cause of action shall exist" language in section 11580.26, subdivision (b), the Legislature may well have been mindful of the concern voiced by Justice Clark in his dissenting opinion in *Neal* that an insurer should not be penalized for "guess[ing] wrong" and losing an arbitration—although, if so, it is surely odd that the *Neal* decision is nowhere mentioned in any of the relevant legislative history. (See *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 526 [46 Cal.Rptr.3d 742, 139 P.3d 119] [" 'it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication' "]; *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 779 [63 Cal.Rptr.2d 859, 937 P.2d 290] [same].) Whatever its origin, section 11580.26, subdivision (b), certainly means a bad faith action may not be based simply on the fact that, after failing to resolve a UM/UIM dispute, the insurer lost the arbitration (that is,

that the insurer disputed liability and the arbitrator found in favor of the insured) or the insured recovered an award greater than the insurer's final settlement offer. Phrased somewhat differently, the provision precludes evaluating whether an insurer acted in good faith in attempting to resolve the dispute by considering, after the fact, the results of the arbitration proceeding. What it does not mean is that the insurer is relieved of its obligation to act reasonably in attempting to settle any disagreement with its insured concerning a UM/UIM claim or its duty "not to withhold unreasonably payments due under a policy." (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 573; see *Wilson, supra,* 42 Cal.4th at pp. 720–721; cf. *Pilimai v Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 142, fn. 2 [45 Cal.Rptr.3d 760, 137 P.3d 939] [§ 11580.26, subd. (b), does not bar recovery of costs under Code Civ. Proc., § 998 based on rejection of prearbitration offer to compromise; request for costs cannot be considered a "cause of action"].) Breaching those duties is not simply "guessing wrong," but acting tortiously.

## DISPOSITION

The order dismissing the action is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Brehm is to recover his costs on appeal.

Zelon, J., and Jackson, J., concurred.

On October 6, 2008, the opinion was modified to read as printed above.