Filed 4/3/23  Kling v. Fire Insurance Exchange CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| MARY J. KLING et al., | B316880 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV41594) |
| v. | |
| FIRE INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Kling Law Firm, Anthony N. Kling; Law Office of David Knieriem and David Knieriem for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher, Gregory B. Scher, H. Douglas Galt and Sander Alvarez for Defendant and Respondent.

———————————

A neighbor's tree fell on appellant Mary Kling's residence.[1] Respondent Fire Insurance Exchange (Fire) insured the residence. It paid approximately $21,000 to cover the damage to the residence and filed a separate subrogation action against the neighbors to recoup what it had paid. However, Kling made a separate and final claim for damages totaling approximately $800,000. Fire declined to pay most of the larger amount after it concluded the impact of the fallen tree did not cause the alleged additional damage.

Kling and Clifford, LLC sued for breach of contract and bad faith failure to pay on the insurance contract. In this opinion we hereinafter refer to both appellants as Kling. The trial court agreed with Fire that the evidence of lack of causation was undisputed and granted summary judgment in favor of Fire. We affirm.

## BACKGROUND

Respondent Fire issued a homeowners policy for the premises located at 160 N. Cliffwood Avenue in Los Angeles. Kling made a claim on the policy when a neighbor's tree fell on the residence on December 9, 2018. On December 12, 2018, Fire's insurance adjuster inspected the property and paid $1,700 to remove the tree and $750 to tarp a portion of the roof to mitigate potential water intrusion. On December 13, 2018, Fire paid $5,636.86 (after subtracting the $1,000 deductible) for repairs to the interior and exterior of the impacted laundry room, a portion of the roof, a portion of a fence and a gate. Kling claimed additional damages to electrical wiring and exterior lights

---

[1] Title to the residence is held by Clifford, LLC. Mary Kling is Clifford, LLC's assignee for insurance purposes.

2

($1,600) and damage to security cameras and wiring ($5,764) which Fire also paid.

In January 2019, Kling submitted a request for $322,197.60 for repairs to the residence and $480,000 for six months of temporary housing pending the completion of the repair work on the new claim. Documenting this claim were a repair estimate from contractor John P. Ingram, Jr. & Associates, Inc. and an entry in the multiple listing service showing a 9,775 square foot home for lease at $80,000 per month.

Fire retained the ProNet Group, Inc. (ProNet) to evaluate Kling's claims for additional damages. ProNet inspected the property on March 25, 2019 and submitted a report dated April 8, 2019. ProNet concluded there was no structural damage to the residence caused by the fallen tree. There were pre-existing cracks observed in the stucco exterior walls of the residence which were not caused by the impact of the neighbor's fallen tree but were exacerbated by it. Based on the report Fire paid an additional $4,514.45 for more repairs. On April 19, 2019, Fire advised Kling that it would pay no more and it closed the claim.

In November 2019, Kling filed a civil action against Fire for breach of contract and bad faith failure to investigate and pay the entire claim. Kling propounded no discovery and did not respond to Fire's discovery requests. Kling took the deposition of Fire's insurance adjuster who testified he relied on a software program called Xactware to calculate repair costs. He did not know how Xactware calculates repair costs.

Fire moved for summary judgment contending Kling could not establish that the fallen tree caused all the additional damages of $800,000.

The trial court agreed, granted summary judgment in favor of Fire, and entered a judgment of dismissal. This appeal followed.

## DISCUSSION

### I.     Standard of Review

The party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact, and that the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Where summary judgment is granted, we review the trial court's ruling de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) We consider all the evidence that was presented by the parties in connection with the motion (except that which the trial court properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) In conducting our de novo review, we liberally construe the evidence in support of the party opposing summary judgment, and we resolve any doubts concerning the evidence in favor of that party. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) We affirm summary judgment only where it is shown there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

### II.     Causes of Action –Breach of Contract

Kling's first two causes of action allege breach of contract and breach of the contractual duty to pay a covered claim based on Fire's refusal to pay all the additional damages of $800,000. In support of its contention that all the additional damages were not caused by the fallen tree and therefore were not covered

4

under the policy, Fire submitted ProNet's structural report that had arrived at the same conclusion, but also determined that some additional damage of $4,514.45 was covered by the policy. In total, Fire paid Kling $21,109.81 minus the $1,000 deductible under the policy.

The elements of a breach of insurance policy contract are 1) a loss; 2) the amount of the loss; 3) the policy coverage of the loss; and 4) notice to the insurer along with proof of loss. (CACI No. 2300.) Kling argued that the repair estimate prepared by John Ingram, Jr. & Associates established that the additional damage was caused by the fallen tree and therefore Fire was obligated to pay for it as a covered loss.

The trial court succinctly summarized its ruling: "The underlying issue is one of causation, not damages. Defendant Fire Insurance Exchange takes the position that the additional damages were not caused by the tree and provides expert opinion in support. . . . [¶] Plaintiff only argues that Fire Insurance Exchange is in the wrong because it did not pay for all the additional damages. Plaintiff ignores the causation issue. Plaintiff does not present any evidence in the form of an expert declaration with regard to causation and coverage flowing therefrom. [¶] Given plaintiff's lack of evidence as to the issue of causation and as plaintiff does not dispute defendant's expert opinion that the additional damage was not caused by the tree, summary adjudication is granted."

We agree with the trial court that Ingram's repair estimate did not purport to opine on causation of the additional damages. The report contains the subject header, "**Tree Damage Main House**" and then lists multiple items that would benefit from repair. Unlike the ProNet report, the repair estimate includes no

5

photos and no text analyzing the cause of the damage to the 100-year-old Spanish Revival residence. (The photos in the ProNet report appear to show aged and cracked stucco on the exterior and interior walls and ceilings, some of which with previously patched seams.) The estimate sets out, among other things, replacement of a cracked concrete driveway, restuccoing and painting of five rooms, including woodwork, and replacement of sink, toilet, washer, dryer, blinds and drapes. There is not one word in the estimate about how this damage was caused. Nor was there a declaration from anyone on the issue of causation.

Although we are bound to liberally construe Kling's evidence, we cannot conclude that the contractor's repair estimate validly constitutes evidence establishing a triable issue of material fact as to whether the fallen tree caused the additional damage.

III. **Causes of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing and Bad Faith Failure to Properly Investigate the Claim**

Kling argues Fire acted in bad faith in declining to pay the entire $800,000 claim and failing to conduct an adequate investigation into the claim. To establish bad faith, it must be shown that insurer acted unreasonably or without proper cause. (*Dalrymple v. United Services Auto Assn.* (1995) 40 Cal.App.4th 497, 520 (*Dalrymple*).) Where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute. (*Ibid; Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723–724 (*Wilson*); *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 345 (*Chateau Chamberay*)

6

[the "genuine dispute" rule protects an insurer from liability in bad faith even though it might be liable for breach of contract].)

Bad faith implies unfair dealing rather than mistaken judgment. The ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits or the alleged delay in paying was unreasonable. (*Chateau Chamberay*, *supra*, 90 Cal.App.4th at p. 346.) While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. (*Paulfrey v. Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 196.) In that situation, it is for the court, not a jury, to decide whether the insurer had "proper cause." (*Dalrymple*, *supra*, 40 Cal.App.4th at pp. 516–517.) While an insurer's reliance on the advice and opinion of experts may be a basis for invoking the doctrine, ultimately a case-by-case analysis is required. (*Zubillaga v. Allstate Indemnity Co.* (2017) 12 Cal.App.5th 1017, 1028.)

We conclude the undisputed evidence supports only one reasonable inference, to wit, that Fire genuinely disputed the additional claim of $800,000 in damages to the residence. We arrive at this conclusion for several reasons. First, Fire promptly paid the initial damage claims. Second, when faced with the additional claim, it contracted with an independent company, ProNet, to evaluate the alleged additional damage and recommend whether it arose from the impact of the fallen tree. Third, when ProNet suggested that at least a small part of the additional damage was covered under the policy, Fire again promptly paid the recommended amount. Fourth, Fire provided the ProNet structural report to Kling and invited feedback from

7

her on the report's conclusions. (Kling provided no feedback other than to file suit.) In sum, there is no evidence that Fire acted unreasonably or unfairly in the way it handled Kling's additional claim for damages. Instead, Fire raised a genuine coverage dispute it was entitled to pursue and resolve before it paid out the requested $800,000.

Similarly, there is no evidence Fire acted precipitously in closing the claim investigation when it did, despite Kling's request to keep it open. Kling provided no evidence for Fire to further investigate and did not respond to Fire's invitation to critique or comment on the ProNet structural report except to provide her contractor's estimate. The "genuine dispute rule" does not relieve an insurer of its obligation to thoroughly and fairly investigate, process, and evaluate the insured's claim. (*Wilson, supra*, 42 Cal.4th at p. 723.) Here, however, Kling gave Fire nothing more to investigate and never anything substantive that Fire chose to ignore.

Finally, Kling's bad faith claims arise from the asserted breach of contract claims. In other words, there cannot be bad faith in failing to pay on the contract or investigate the contract claim if no benefits are due under the policy. (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1235.) If the breach of contract claim fails, so does the claim for breach of the implied covenant of good faith and fair dealing. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.)

Because Kling failed to establish a triable issue of fact as to causation and coverage and did not refute Fire's report that all the additional damages were not caused by the impact of the tree, the causes of action alleging bad faith do not survive.

## IV.    Motion for a New Trial and To Vacate the Judgment

After the court granted summary judgment, Kling learned that Fire had brought a subrogation action against the neighbors to recoup from them what it had paid Kling under the policy. Kling moved to vacate the judgment and for a new trial. Kling accused Fire of deliberately misleading the court and the parties when it failed to voluntarily disclose the complete subrogation case file. Kling claimed prejudice from the nondisclosure of the subrogation action because documents from that action could have been used to oppose the summary judgment motion.

The trial court made short shrift of the contention. "The subrogation action was filed to recoup the payout from the owner of the tree. Now the subrogation action, from this court's view, doesn't have any bearing or regard to the claim of excessive damages in this action nor in the summary judgment; therefore, the evidence from the subrogation is not and was not material to the summary judgment [and] can't be used as a basis for a new trial."

We agree. The subrogation action sought to recoup money Fire actually paid out, that is, $21,109.81, minus the $1,000 deductible. Documentation relevant to that action would have confirmed what Fire actually paid out. Kling's complaint was not about what Fire had paid; it was about what Fire refused to pay, an issue completely irrelevant to the subrogation action. Kling's contention that Fire should have paid more to its insured would not have been relevant to Fire's affirmative subrogation case or to the neighbor's defense of the case. The failure to disclose documents from that action does not warrant a new trial or vacatur of the summary judgment.

9

## DISPOSITION

The judgment of dismissal is affirmed.  Respondent is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

WILEY, J.

10