Filed 4/8/13  Kupfer v. Mid-Century Ins. Co. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| **KONSTANTIN KUPFER,** | |
| **Plaintiff and Appellant,** | **A134732** |
| v. | |
| **MID-CENTURY INSURANCE COMPANY,** | **(San Francisco City and County Super. Ct. No. CGC-10-503068)** |
| **Defendant and Respondent.** | |

The trial court granted defendant Mid-Century Insurance Company's (respondent) motion for summary judgment in this action brought by plaintiff Konstantin Kupfer (appellant) asserting causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.  We affirm.

## BACKGROUND[1]

In December 2008, appellant submitted a claim to respondent for the theft of his 2006 Bentley (Vehicle).  Although the Vehicle was recovered, it had suffered substantial damage and was determined to be a total loss.  Appellant's insurance policy defined "replacement cost" as the cost to purchase the insured's vehicle or an equivalent on the local market.

---

[1]  In this appeal from the trial court's order granting respondent's motion for summary judgment, we view the evidence in the light most favorable to appellant.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  Our factual summary reflects this standard of review.  (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1056, fn. 1.)

Upon receiving notice of the claim, respondent obtained estimates of the value of the Vehicle by requesting Bid Enterprises to prepare an appraisal (Appraisal), and by obtaining a "CCC Valuation Market Report" (Report). It appears the Report was generated based on information about the Vehicle provided by respondent and a posttheft inspection of the Vehicle by Bid Enterprises; the estimated value of the Vehicle was $137,125. The Appraisal was based on information provided by respondent; the estimated value of the Vehicle was $139,981. Both the Report and Appraisal purported to base their value estimates on comparisons to sales of comparable vehicles.

In February 2009, based on the Report and Appraisal, respondent sent appellant a check for $136,125, which reflected appellant's $1,000 deductible. Along with the check, respondent sent a letter demanding an appraisal of appellant's loss pursuant to an appraisal provision in the insurance policy. That provision states, "You or we may demand appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will notify the other of the appraiser's identity within 20 calendar days of the receipt of the written request. Each will equally share other appraisal expenses. The appraisers, or a judge of a court having jurisdiction will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the amount payable, which shall be binding, subject to the terms of this insurance." Respondent's letter to appellant stated, "We have selected Bid Enterprises as our appraiser. Please call our office with the name, address and phone number of your appraiser. We will advise our appraiser and request they meet to resolve the matter." The letter stated a final payment to appellant would be made "based on the outcome of the appraisal process."

The parties had disagreements regarding the appraisal process. In April 2009, appellant objected to the selection of Dave Adams of Bid Enterprises as respondent's appraiser; appellant took the position that Adams was not disinterested because he had prepared the original Appraisal and could be called as a witness at the appraisal hearing. The parties also disagreed on the selection of an umpire for the appraisal panel. The parties agreed to file a petition with the San Mateo Superior Court requesting

appointment of an umpire. Appellant filed the petition in September 2009. Prior to the decision on the petition, the parties agreed on the appointment of Gene Roberts as umpire. In November 2009, the San Mateo Superior Court approved the parties' stipulation, appointed Roberts as umpire, and ordered the parties to conduct an appraisal "pursuant to their contract . . . with each other under Insurance Code [section] 2071 et seq. and any other appropriate sections." (Italics omitted.) In December 2009, the umpire informed the parties that Adams would likely be disqualified from being a panel appraiser. In February 2010, respondent agreed to the hearing procedures and to select a different appraiser.

On February 16, 2010, the appraisal hearing was conducted. Five weeks later, the appraiser panel issued an award of $214,392, which was less than the amount requested by appellant but considerably more than the amount paid by respondent in February 2009. Respondent promptly paid the balance due for the loss, and appellant accepted the payment.

In August 2010, appellant filed the present action for breach of contract and breach of the implied covenant of good faith and fair dealing. In August 2011, respondent filed a motion for summary judgment. In December 2011, the trial court granted the motion, stating in part, "The undisputed facts establish that there was a genuine dispute regarding the amount of [appellant's] claim thereby precluding liability for insurance bad faith." This appeal followed.

DISCUSSION

I. *Standard of Review*

" 'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish," ' the elements of his or her cause of action. [Citation.]" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).) " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court

3

when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]' [Citation.]" (*Id.* at pp. 716-717.)

II. *There is No Triable Issue as to Appellant's Bad Faith Claim*

"California law recognizes in every contract, including insurance policies, an implied covenant of good faith and fair dealing. [Citations.] In the insurance context the implied covenant requires the insurer to refrain from injuring its insured's right to receive the benefits of the insurance agreement. [Citation.] '[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.' [Citation.]" (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1235 (*Brehm*).) " '[B]reach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. . . . [E]ven an insurer that pays the full limits of its policy may be liable for breach of the implied covenant if improper claims handling causes detriment to the insured.' [Citations.]" (*Id.* at p. 1336.)

As relevant to appellant's claims in the present case, "an insurer's obligations extend beyond simply paying the benefits to which its insured is entitled: '[W]hen benefits are due an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for losses." ' [Citations.]" (*Brehm*, *supra*, 166 Cal.App.4th at p. 1236; see also *Rappaport-Scott v. Interinsurance Exchange of Automobile Club* (2007) 146 Cal.App.4th 831, 837 (*Rappaport-Scott*) ["An insurer's obligations under the implied

4

covenant of good faith and fair dealing with respect to first party coverage include a duty not to unreasonably withhold benefits due under the policy.  [Citation.]"].)

Nevertheless, the "genuine dispute rule" protects insurers who maintain positions with respect to coverage in good faith.  As the Supreme Court has explained, "an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable.  [Citation.]  As a close corollary of that principle, it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.'  [Citation.]"  (*Wilson*, *supra*, 42 Cal.4th at p. 723; accord, *Brehm*, *supra*, 166 Cal.App.4th at p. 1237; see also *Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837.)  Nevertheless, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim.  A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds.  [Citation.]"  (*Wilson*, at pp. 723-724, fn. omitted.)

In *Wilson*, the Supreme Court affirmed the Court of Appeal's decision reversing the trial court's grant of summary judgment to an insurer, holding the insured had demonstrated a triable issue as to whether the insurer's decision to deny her claim was made reasonably and in good faith.  (*Wilson*, *supra*, 42 Cal.4th at p. 716.)  Although the insurer ultimately paid the full policy limits, the insured alleged she had been harmed by the initial bad faith denial of benefits.  (*Id.* at pp. 719-720.)  The insured had submitted medical evidence indicating she suffered a neck injury in an accident involving an underinsured motorist.  (*Id.* at pp. 717-718.)  Without contacting the insured's doctor or having its own physician review the medical records, the insurer denied the underinsured motorist claim on the ground that the insured's pain was due to a preexisting condition.  (*Id.* at pp. 718-719.)  *Wilson* concluded a jury could reasonably find that nothing in the materials the claims examiner reviewed justified his conclusions (*id.* at p. 721):  "[U]nder the facts of this case a triable issue of fact exists as to whether it was reasonable to deny

5

[the insured's] claim on the grounds stated without further medical investigation." (*Id.* at p. 723; see also *Brehm*, *supra*, 166 Cal.App.4th at p. 1239.) *Wilson* stated, " 'an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.' [Citation.] Thus, an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues [citation] as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." (*Wilson*, at p. 724.)

The present case is distinguishable from *Wilson* because respondent *did* conduct a meaningful investigation of appellant's claim by obtaining two professional value estimates. Appellant argues, whether respondent "used like kind vehicles as comparables is in dispute," the fact that respondent "did not include extras in [appellant's] car and valued it at a lower condition illustrate this point," and "a reasonable inference can be drawn that [respondent] did not use like kind vehicles from the fact that [respondent's] original payout was only [60 percent] of the actual value of the car." However, appellant's evidence does not provide a reasonable basis for the jury to conclude respondent acted unreasonably in obtaining the Report. Appellant asserts respondent knew the Vehicle was "extremely rare" and in "pristine" condition, but he cites only to evidence that he described the Vehicle in that manner in submitting his claim. Appellant does not explain why respondent was obligated to accept his characterization of the condition of the vehicle. In any event, although the Report states "Condition is 2: Average," appellant cites to nothing in record explaining the significance of that and any likely effect on the estimate of value. And appellant's evidence does not suggest it was unreasonable for respondent to rely on the Report to account for the rarity of the Vehicle; the Report does state the Vehicle has the "Arnage Diamond Edition Package." Appellant also asserts the Report does not account for the fact that the Vehicle was "equipped with an updated engine and special mascots." But appellant's record citations only contain an assertion in his counsel's declaration that the Vehicle was so equipped; there are no

6

record citations to competent evidence on that point, nor is there any explanation with sufficient detail to permit a jury to conclude the Report was inadequate in that regard.

Furthermore, respondent did not rely on only the Report; it also requested the Appraisal from Bid Enterprises. The estimated value in the Appraisal was similar to the estimated value in the Report. Appellant cites to no portion of the Appraisal that allegedly misrepresents the condition or other characteristics of the Vehicle. The Appraisal itself indicates that the appraiser conducted its own "thorough inspection of the recovered remains of the [V]ehicle." The Appraisal appears to be based on an assumption that all parts of the Vehicle, including the sheet metal, paint, and interior were in "excellent" condition. It relied on three "currently advertised comparable vehicles" in making an estimate of the value of the Vehicle. It is true that "an expert's testimony will not *automatically* insulate an insurer from a bad faith claim based on a biased investigation" (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 348), but appellant has not presented facts from which a jury could conclude respondent should have been aware the Appraisal was unreliable. (See also *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1239, fn. omitted (*Bosetti*) ["When an insurer is subjectively aware that it has hired a biased expert, it is simply not objectively reasonable to rely on that expert."].)

Although it was ultimately determined at the hearing that the Report and Appraisal undervalued the vehicle by approximately 60 percent, even viewing the facts in the light most favorable to appellant, appellant has not presented evidence from which a jury could conclude that respondent's investigation "was in any way biased, inadequate, superficial or otherwise unworthy of reliance by an objectively reasonable insurer." (*Bosetti*, *supra*, 175 Cal.App.4th at p. 1240, fn. omitted.) Stated more broadly, unlike the insured in *Wilson*, appellant has not "presented sufficient evidence for a jury to find" respondent's initial payment was " ' "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving

7

that party of the benefits of the agreement." ' [Citation.]" (*Wilson*, *supra*, 42 Cal.4th at p. 726.)

Neither has appellant presented evidence demonstrating the existence of a triable issue on his bad faith claim on the basis of delay. Although more than a year passed between submission of appellant's claim and his receipt of the final payment following the appraisal proceeding, appellant did not present evidence from which a jury could conclude the delay resulted from unreasonable conduct on the part of respondent. For example, appellant did not present evidence from which a jury could conclude that the positions taken by respondent were frivolous, and he did not present evidence that the delay was largely due to the positions taken by respondent, rather than other causes for which respondent was not responsible. Appellant's evidence merely shows there were genuine disputes between the parties regarding the appraisal and hearing process under the contract, including the selection of the umpire and respondent's appraiser for the hearing. Those disputes caused some delay, but the evidence does not demonstrate what portion of the delay was due to positions taken by respondent. Appellant fails to cite any authority supporting his argument that the resulting delay, due to relatively routine procedural disputes between the parties, can form the basis for his bad faith claim. The trial court properly concluded there was no triable issue of fact as to whether respondent violated its duty of good faith by causing delay.

III. *There is No Triable Issue as to Appellant's Breach of Contract Claim*

Appellant contends that, even if respondent did not violate the implied covenant of good faith and fair dealing, respondent's conduct constituted breach of the insurance contract. (See *MacGregor Yacht Corp. v. State Comp. Ins. Fund* (1998) 63 Cal.App.4th 448, 455-456.) However, appellant fails to identify the contractual provisions allegedly breached by respondent. Instead, appellant points to statements in respondent's "Field Claims Service Guidelines" identifying as "[u]nfair claims practices," "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims" and "[f]ailing to settle claims promptly where liability has become apparent." Appellant fails to explain how violation of those internal guidelines would constitute a breach of

8

contract.  In any event, as explained previously, there is no evidence in the record from which a jury could conclude respondent acted in bad faith or caused unreasonable delay. The trial court properly concluded there was no triable issue of fact as to appellant's breach of contract claim.

DISPOSITION

The trial court's judgment is affirmed.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
NEEDHAM, J.