Filed 12/16/13  Avetisyan v. Nat. Specialty Ins. Co. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ARTAK AVETISYAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NATIONAL SPECIALTY INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B245738<br><br>(Los Angeles County<br>Super. Ct. No. BC467133) |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald M. Sohigian, Judge.  Reversed.

Jeffrey Korn for Plaintiff and Appellant.

Law Offices of Adrienne D. Cohen, Adrienne D. Cohen and Philip G. Dorn for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Artak Avetisyan appeals from a judgment entered after the trial court granted a motion by defendant National Specialty Insurance Company (National) for summary judgment. Avetisyan argues that the trial court erred in granting summary judgment because whether National's handling of his uninsured motorist claim breached the implied covenant of good faith and fair dealing is a question of fact. We agree and reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Avetisyan's Accident and Uninsured Motorist Claim*

On May 4, 2009 Avetisyan suffered severe head injuries when he lost control of the car he was driving, and the car went over the side of the freeway and rolled down an embankment. On June 16, 2009 Avetisyan made a claim with his insurer, National, under his uninsured motorist coverage for $60,000, the policy's limit for that coverage.[1] Avetisyan claimed that the cause of the accident was another vehicle that hit him from behind and then drove away.

### B. *The Accident and Medical Reports*

Officer James Oberlander arrived at the accident scene and subsequently prepared a traffic collision report. Officer Oberlander wrote in his report that, during an interview

---

[1] Avetisyan's business auto policy included $60,000 in coverage for "uninsured/underinsured motorists." The definition of an "uninsured motor vehicle" included "a land motor vehicle or trailer" that "is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must make physical contact with an 'insured', a covered 'auto' or a vehicle an 'insured' is 'occupying' . . . ." The policy provided that disagreements regarding a claim would be settled by arbitration, initiated by either party.

with Avetisyan at the hospital, Avetisyan "related he simultaneously felt an impact from the rear and on the left side of his vehicle. . . . [H]e lost control of his vehicle but doesn't remember anything else." Officer Oberlander, who did not see the accident, wrote in his report that he "was unable to substantiate if [Avetisyan's car] was hit by any vehicle before or after [Avetisyan] lost control." Officer Oberlander also wrote in his report that Avetisyan "lost control of [his car] as a result of making an unsafe turning movement to the right for unknown reasons." On the traffic collision coding page of the report, the officer marked an "x" by "L Uninvolved Vehicle," and wrote that Avetisyan "caused this collision by driving in violation of [Vehicle Code section] 22107[], which states[:] no person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety . . . ." The officer stated that his summary of the accident and conclusions "were determined by the damage to the involved vehicle and statements obtained."

The accident report included summaries of statements by four witnesses who spoke with Officer Oberlander. None of the witnesses reported seeing another vehicle hit Avetisyan's car. Officer Oberlander reported that witness Craig Walendy told him at the scene that "he did not see any vehicles affect [Avetisyan's car] prior to the collision." Officer Oberlander reported that he also spoke later on the phone with witnesses Tamara Levy, Michelle Castro, and Andrea Goldman. Officer Oberlander wrote that Levy told him that "she first heard a 'thunk' and then saw [Avetisyan's car] come across lanes [and she] hit her brakes to avoid colliding into the [car] as it crossed her path." He also wrote that Goldman told him that she "was driving in the #3 lane . . . behind [Avetisyan's car] that was in the #2 lane. [She] related it looked like the driver of [Avetisyan's car] got 'spooked' and then swerved to the right. [The car] began fishtailing side to side, possibl[y] hit a car in the #1 lane and then went across all lanes to the right. [Goldman] related it appeared to be [Avetisyan's] own fault." And he wrote that Castro told him that "she observed [Avetisyan's car] in the #1 lane begin skidding across all lanes to the right. . . . [S]he did not see any vehicle affect the [car] prior to it losing control."

3

One of the physicians who treated Avetisyan at the hospital prepared a medical report. The "History" section of the report stated: "The patient . . . was the restrained driver of a Lincoln town car that was involved in a high-speed solo spin out with rollover. According to law enforcement authorities, the vehicle rolled over several times before coming to rest. . . . The patient . . . was conscious when paramedics arrived . . . . Nevertheless, his level of consciousness was altered. . . . He seemed relatively confused."

C.      *National Denies Avetisyan's Claim; Avetisyan Prevails in the Arbitration*

On approximately June 16, 2009 Avetisyan sent a letter to National demanding payment of the $60,000 uninsured motorist benefits. On the basis of Officer Oberlander's accident report and the physician's medical report, National, through its third party administrator Knight Management Insurance Services, LLC (Knight), denied Avetisyan's uninsured motorist claim "since there was a genuine dispute between the claimant and the insurance company as to whether the claimant's vehicle was struck by another vehicle . . . ." On August 7, 2009 Eric Cervantes, a claims representative at Knight, wrote to counsel for Avetisyan: "Please be advised that Knight Management Insurance Services, LLC has completed its investigation in regards to the matter . . . . Based on our investigation, we have determined that your client was not involved in a collision with another vehicle but lost control and collided into the freeway guardrail. This letter will serve as a formal denial of liability of your client's claim for Uninsured Motorist coverage."

On October 27, 2009 Avetisyan, this time through counsel, again demanded the $60,000 uninsured motorist policy limit or in the alternative demanded arbitration. On December 21, 2010 the parties participated in a formal arbitration hearing. The arbitrator issued an award in Avetisyan's favor for $60,000, the policy limit for uninsured motorist benefits. National paid the amount promptly.

4

D.    *Avetisyan Files This Action*

On August 8, 2011 Avetisyan filed this action against National and Knight alleging breach of contract and breach of the implied covenant of good faith and fair dealing.[2]  Avetisyan alleged that a vehicle hit his car and then "fled the scene and was never identified . . . ."  Avetisyan alleged that there was "[s]ubstantial evidence available to [National and Knight] during the time period May 4, 2009 to August 7, 2009 indicating that the probable cause of the accident was a hit and run vehicle impacting [his] vehicle," that "[c]ontact information for the several witnesses . . . was readily available to [National and Knight] but [National and Knight] made no effort to contact or interview the witnesses," and that had National and Knight "conducted an appropriate investigation, they in fact would have confirmed [Avetisyan] was entitled to benefits." Avetisyan alleged that National denied him benefits "with no investigation into the facts of the incident" and "based on a policy of denying benefits so that its insureds would give up their claims regardless of merit," and as part of a pattern and practice of demanding arbitration rather than timely investigating and paying meritorious claims.  Avetisyan alleged that National "knew that [he] was in a vulnerable position, injured and unable to work, and would have difficulty obtaining the money necessary to investigate and pursue his claim and gain policy benefits."  National's answer asserted several affirmative defenses, including that there was a genuine dispute "as to whether there was any contact between the vehicle [Avetisyan] was driving and an alleged phantom vehicle," and that National "was justified in taking the position that it did based upon the advice of counsel."

National filed a motion for summary judgment or in the alternative for summary adjudication on the grounds that there was a genuine dispute whether Avetisyan's claim was covered and that National had relied on the advice of counsel in denying Avetisyan's

---

[2]    Knight is not a party to this appeal.

5

claim and recommending arbitration.[3]  National submitted the declaration of Warren "Chip" Dean, an insurance defense lawyer who had "handled over 100 Uninsured or Underinsured Motorist Claims in [his] career."  Avetisyan submitted the declaration of Richard Masters, an expert in the insurance industry.  National filed evidentiary objections to Masters' declaration.

At the hearing on the summary judgment motion the court sustained most of National's evidentiary objections to Masters' declaration.  The trial court then granted National's motion, stating:  "My view is that . . . , there is no triable issue of material fact concerning whether there was a genuine dispute as to the existence of liability or coverage liability. . . .  Both the tort and contract causes of action arise out of the same behavior by [National]."  "[Avetisyan] claims he was struck by another vehicle.  The traffic collision report, which appeared to combine the observation[s] of numerous witnesses and included the officer'[s] conclusion that it was a single vehicle accident.  The findings of that . . . report appeared to me to hold up or stick together under scrutiny during the deposition of the . . . officer and the witnesses.  The reasoning or conclusion of the . . . report obviously is not dispositive. . . .  [T]he question is whether that was

---

[3]  National moved for summary judgment and summary adjudication pursuant to Code of Civil Procedure section 437c, subdivision (*o*)(2), on the ground that its affirmative defenses of genuine dispute and advice of counsel barred Avetisyan's bad faith cause of action, and pursuant to Code of Civil Procedure section 437c, subdivision (*o*)(1), on the ground that Avetisyan could not establish the element of breach of his bad faith cause of action.  The existence of a genuine dispute and the reliance on the advice of counsel are ways of showing that an insurer's conduct was reasonable.  (See *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723 [genuine dispute rule is a "close corollary" of the principle that "an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable"]; *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 804 ["the genuine dispute doctrine is 'subsumed within the concept of what is reasonable and unreasonable'"];  Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2012) ¶¶ 12:837, 12:837.1, pp. 12C-8, 12C-9 (rev. #1 2013) ["[g]enuine dispute doctrine" is "[p]art of 'reasonableness' analysis" and "one way" the insurer can go "forward with evidence negating 'unreasonableness'"].)

sufficient for [National] to have been reasonable in its behavior because of the existence of a good faith, reasonably positioned dispute. It did. . . . It turned out to be unmeritorious, but it was not unreasonable, and it does not cancel the existence of a good faith dispute which I think existed on this record."

The trial court entered judgment in favor of National on October 16, 2012. This timely appeal followed.

## DISCUSSION

Avetisyan contends that the trial court erred in ruling that National's investigation and denial of his claim were reasonable as a matter of law, and that therefore National was not entitled to summary judgment. We agree that the reasonableness of National's conduct in this case is a factual issue that cannot be resolved on summary judgment.

### A. *Standard of Review*

We review a trial court's order granting a motion for summary judgment "de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018; *Shin v. Ahn* (2007) 42 Cal.4th 482, 499; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Code of Civil Procedure section 437c, subdivision (c), provides that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (See *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618 [court may grant a summary judgment motion only "if no triable issues of material fact appear"]; *Aguilar*, *supra*, at p. 843.)

A moving defendant "'bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action. [Citation.]" (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at

7

p. 720; see Code Civ. Proc., § 437c, subds. (*o*) & (p)(1).) If the defendant meets this initial burden, then the burden shifts to the plaintiff to show that a triable issue of material fact exists. (See Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.) "When a defendant moves for summary judgment on the ground there is an affirmative defense to the action, the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.) "Where the evidence submitted by a moving defendant does not support judgment in his favor, the court must deny the motion without looking at the opposing evidence, if any, submitted by the plaintiff." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 354.)

        B.     *The Implied Covenant of Good Faith and Fair Dealing*

"Implied in every contract is a covenant of good faith and fair dealing that neither party will injure the right of the other to receive the benefits of the agreement." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 314; accord, *Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 720; *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1235.) If an insurer "'unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort'" for breach of the implied covenant. (*Wilson*, *supra*, at p. 720; accord, *PPG Industries, Inc.*, *supra*, at p. 315; *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 524.)

"Before an insurer can be found to have acted in bad faith for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause*." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1072.) "'[A]n insurer denying or delaying the payment of policy benefits due to the existence of

8

a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.' [Citation.]" (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 723; *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347.) In addition, if an insurer reasonably relied on the sound advice of competent counsel in determining to delay or deny a claim, the insurer may not be liable for breach of the implied covenant of good faith and fair dealing. (*State Farm Mut. Auto. Ins. Co. v. Superior Court* (1991) 228 Cal.App.3d 721, 725.)

"'[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact,'" except in the "exceptional instance when 'only one reasonable inference can be drawn from the evidence.' [Citation.]" (*Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 599; see *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 86; *Brehm v. 21st Century Ins. Co.*, *supra*, 166 Cal.App.4th at p. 1241, fn. 8 ["the question whether an insurer unreasonably withheld benefits due under the policy in a first party coverage context . . . is ordinarily an issue to be determined by the trier of fact"].) An insurer is not entitled to judgment as a matter of law on a cause of action for breach of the implied covenant of good faith and fair dealing where, viewing the evidence in the light most favorable to the plaintiff, a jury could conclude the insurer acted unreasonably. (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 724; accord, *McCoy v. Progressive West Ins. Co.* (2009) 171 Cal.App.4th 785, 794.)

C.    *Whether National Acted Reasonably in Denying Avetisyan's Claim Is a Question of Fact for the Jury*

Avetisyan contends that, under the circumstances of this case, whether National's denial of his claim was reasonable is a factual issue for the jury. Avetisyan argues that National failed to conduct a full, fair, and thorough investigation of all factual bases of his claim, failed to consult counsel prior to denying the claim, and failed to treat his interests with the same consideration National gave to its interests. National argues that

the undisputed evidence shows that its action was reasonable because there was a genuine factual dispute over whether another car hit Avetisyan's car and because National relied on advice of counsel.

Although the implied covenant of good faith and fair dealing does not require an insurer "to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.' [Citation.]" (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at pp. 720-721; see *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819.) "Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 879.) "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." (*Wilson*, *supra*, at p. 723; accord, *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 428; see *Brehm v. 21st Century Ins. Co.*, *supra*, 166 Cal.App.4th at p. 1238 ["an important limitation on the genuine dispute rule" is that the insurer must still thoroughly investigate the claim].) "The insurer cannot claim a 'genuine dispute' regarding coverage in such cases because, by failing to investigate, it has deprived itself of the ability to make a fair evaluation of the claim." (*Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1072.) Whether an insurer's investigation was reasonable depends on the circumstances. (See *Wilson*, *supra*, at p. 723 ["[a]n insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions"]; *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1237 ["delay or denial of policy benefits[] must be 'founded on a basis that is *reasonable under all the circumstances*'"].)

An insurer's investigation can be unreasonable because it is limited to one or two sources of information about the claim and does not include a review of other available information. For example, in *Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, the insurer claimed that its investigation was reasonable because it had "obtained every writing in existence" describing the event giving rise to the claim. (*Id.* at

p. 1624.)  The court disagreed, stating that the insurer "did not fulfill its duty to obtain the readily available statements of all the percipient witnesses" or to contact the insured's treating physician.  (*Ibid.*)  "Instead of considering all the evidence available to it with a view towards coverage," the insurer relied on one document (a death certificate stating the cause of death).  (*Id.* at p. 1625; see *Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 721 [summary judgment for insurer was inappropriate because a jury could find the insurer's exclusive reliance on a medical report and claims examiner's opinion was an unreasonable investigation]; *Egan v. Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at p. 819 [investigation of the claim was unreasonable because the insurer failed to consult with the insured's physicians or obtain an independent medical examination]; *Bosetti v. United States Life Ins. Co. in City of New York*, *supra*, 175 Cal.App.4th at p. 1237 ["[a]n insurer cannot claim the benefit of the genuine dispute doctrine based on an investigation or evaluation of the insured's claim that is not full, fair and thorough"]; *Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1072 [summary judgment was improper where there were factual issues regarding the reasonableness of the insurer's limited investigation].)

Here, National relied solely on the accident report by Officer Oberlander and the medical report by an emergency room physician, without further investigation, to deny Avetisyan's claim.  The accident report, however, was the product of one person, Officer Oberlander, who was not present at the time of the accident.  The accident report included conflicting information about whether another vehicle was involved in the accident.  The report included a statement by Avetisyan, who was present at the time of the accident, that there was another car involved in the accident that hit his car and caused him to lose control.  Although the officer wrote that he thought it was a single-vehicle accident caused by Avetisyan making an unsafe turning movement, he also included the qualifier that he was unable to substantiate if Avetisyan's car was hit by another vehicle.  In addition, although none of the four witnesses whose hearsay statements Officer Oberlander included in his report saw another vehicle hit Avetisyan's car, one of the witnesses (Levy) told the officer that she heard a sound (a "thunk") that

11

could indicate a collision with another car. The medical report, written by an emergency room physician who also did not witness the accident and who reported that it "was difficult to obtain [a] history from the patient initially due to his confusion," does not state how or from whom the doctor obtained the information in the report about the accident. The doctor also acknowledged that Avetisyan was confused, had an altered level of consciousness, and "was oriented to his name but did not give reproducible answers with respect to his age or the date."

National's decision to deny Avetisyan's claim based on the conflicting information in a single police report and the conclusions of two people who were not witnesses to the accident is not enough to show that National's investigation was complete, thorough, and reasonable as a matter of law. National did not present any evidence that it made any efforts to contact any of the four witnesses to the accident, Officer Oberlander, or even Avetisyan, to obtain any additional information. In particular, National did not take any steps to follow up on Levy's statement about the loud "thunk" or inquire about whether the witnesses were even in a position to see whether another car collided with Avetisyan's car. National did not contact Castro, who subsequently testified in a deposition in connection with the arbitration: "I did see . . . a large SUV, I don't know if it was a Lincoln or a Navigator, a black SUV, that was in the first lane near the center divider, near [Avetisyan's] car. . . . He must have been behind, I think. I'm not sure. But I remember as soon as the car started rolling I did notice that black large SUV, either a Lincoln or a Navigator, right in that lane.

National did not even speak with or interview Avetisyan to ask about the impact he said he felt, why he believed another car had hit him on the freeway, or even to evaluate Avetisyan's credibility and make an informed decision about whether he was telling the truth. National admitted in discovery responses that it did not interview anyone or obtain any statements regarding Avetisyan's claim. Indeed, the evidence showed that National did not do anything to investigate Avetisyan's claim other than have one claims representative and his supervisor read two reports by individuals with second and third hand knowledge. This is not one of those "exceptional" situations

12

where a court can conclude that the insurer's investigation was reasonable as a matter of law. (*Lee v. Fidelity Nat. Title Ins. Co.*, *supra*, 188 Cal.App.4th at p. 599; see *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 220 [insurer breached implied covenant where it "failed to investigate . . . after . . . it learned of the existence of the witnesses" who had knowledge about the claim].)[4]

The trial court found that some of the evidence subsequently obtained from depositions taken in connection with the arbitration appeared to support Officer Oberlander's conclusions. National also points to arbitration testimony and to the fact that, after the arbitrator ruled in favor of Avetisyan and awarded him full policy benefits, National "then promptly paid the arbitration award." This evidence is not relevant to the evaluation of the reasonableness of National's denial of Avetisyan's claim because, as noted above, "'[t]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made . . . .' [Citation.]" (*Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1073, quoting *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, *supra*, 90 Cal.App.4th at p. 347.) Moreover, "'[e]ven an insurer that pays the full limits of its policy may be liable for breach of the implied covenant, if improper claims handling causes detriment to the insured.' [Citations.]" (*Brehm v. 21st Century Ins. Co.*, *supra*, 166 Cal.App.4th at p. 1236.) "[A]n insurer's obligations extend beyond simply paying the benefits to which its insured is entitled: '[W]hen benefits are due an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for losses."' [Citations.]" (*Ibid.*)

---

**4** There are "some cases [where] review of the insured's submitted medical records might reveal an indisputably reasonable basis to deny the claim without further investigation." (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 723; accord, *Bosetti v. United States Life Ins. Co. in City of New York*, *supra*, 175 Cal.App.4th at p. 1240, fn. 27.) This is not one of those cases.

Moreover, National's duty to investigate was not limited to obtaining information to support the denial of Avetisyan's claim. National had a duty to seek information that might support Avetisyan's claim. "[I]n order to protect the interests of its insured, it [is] 'essential that an insurer *fully* inquire into *possible* bases that *might* support the insured's claim.'" (*Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1072, quoting *Egan v. Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at p. 819; accord, *Frommoethelydo v. Fire Ins. Exchange*, *supra*, 42 Cal.3d at p. 220.) This is because an insurer must consider "all the evidence available to it with a view towards coverage." (*Mariscal v. Old Republic Life Ins. Co.*, *supra*, 42 Cal.App.4th at p. 1625.) "'An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing.'" (*Jordan*, *supra*, at p. 1074.) "A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim." (*Mariscal*, *supra*, at p. 1623; see *Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 721.)

National did not make any effort to investigate possible bases of support for Avetisyan's claim beyond the reports of Officer Oberlander and the emergency room physician, neither of whom was seeking information that might support Avetisyan's claim. National failed to investigate information contained in the police report that might support the claim, such as Avetisyan's statement that there was a collision and Levy's statement about a noise that could indicate that there was a collision. As Avetisyan argued in the trial court, it was a reasonable inference that National "'cherry picked' the strongest 'evidence'" and "ignored all other sources of information so that it could deny the claim . . . ." (See *Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 724 & fn. 8 ["a jury could reasonably find" that the insurer "had unfairly ignored . . . evidence submitted by its insured"]; *Gentry v. State Farm Mut. Auto. Ins. Co.* (E.D.Cal. 2010) 726 F.Supp.2d 1160, 1166 ["[a]n insurer cannot just focus on facts that support its position"].)

Finally, Avetisyan's policy, like the policy in *Brehm*, required a disagreement between the insurer and the insured before either side could demand an arbitration.**5** (See *Brehm v. 21st Century Ins. Co.*, *supra*, 166 Cal.App.4th at p. 1242.) This court in *Brehm* held that "by making lack of agreement as to the value of the claim an express precondition to demanding arbitration, the policy itself contemplates the parties will first make an affirmative effort to resolve their dispute, in effect creating a contractual duty to discuss the claim to which the implied covenant of good faith and fair dealing properly attaches." (*Id.* at p. 1242.) Therefore, National had an obligation not only to investigate and "honestly assess [Avetisyan's] claim," but also "to make a reasonable effort to resolve any dispute with him . . before invoking" the right to arbitrate under the policy. (*Ibid.*) National has not cited to any evidence in the record that it made a reasonable effort to resolve its dispute with Avetisyan prior to arbitration.

"'The genuine [dispute] rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.]'" (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 724.) Under the circumstances of this case, it was for a trier of fact to decide "whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." (*Ibid.*) Viewing the evidence in the light most favorable to Avetisyan, a jury could conclude that National acted unreasonably in its limited investigation and its lack of effort to resolve the coverage dispute prior to arbitration.

---

**5** The arbitration provision, section 5a, states "If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages . . . or do not agree as to the amount of damages . . . , the disagreement will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party."

D.      *Whether National Acted Reasonably in Relying on the Advice of Counsel*

National also argues that its denial of Avetisyan's claim was reasonable as a matter of law because National relied on its attorney's advice to arbitrate rather than pay the claim. Citing the declarations of John Duffy, National's counsel in the arbitration, and Howard Hirsch, Knight's Vice-President and General Counsel, National argues: "In the underlying claim, [National], after denying liability based upon the aforementioned genuine dispute, hired competent and experienced defense counsel who, consistently advised that the underlying claim should be arbitrated because the defense counsel did not believe that [Avetisyan] would be able to meet his burden of proof at the arbitration."

It is undisputed, however, that National did not obtain or rely on any advice of counsel until after National had already denied Avetisyan's claim on August 7, 2009. As National conceded in its motion and concedes on appeal, National "hired defense counsel after it denied the claim." Hirsch explained why: "It is not our practice to have outside counsel review factual issues," like the one in this case. National's reliance on the advice of counsel cannot support its argument that it acted reasonably in denying Avetisyan's claim, because counsel gave the advice after National had denied the claim. (See *Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1073; *State Farm Mut. Auto. Ins. Co. v. Superior Court*, *supra*, 228 Cal.App.3d at p. 725 [advice of counsel defense requires that "the insurer relied on the advice of competent counsel"].) Therefore, National was not entitled to summary judgment on the ground that it relied on the advice of counsel.[6]

---

[6]      The trial court granted National's motion "in its entirety," including on Avetisyan's claim for punitive damages. Avetisyan does not present any argument in his briefs that the trial court erred in summarily adjudicating his claim for punitive damages. Therefore, he has forfeited any claim of error relating to this claim. (See *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 & fn. 1 [failure to challenge trial court rulings on appeal "forfeit[s] any contentions of error regarding them"]; *Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1410 [insured waived challenge to order granting summary adjudication on punitive damages claim against insurer by failing to raise the issue in his opening brief].) In addition, because we conclude that National did not meet its burden in moving for summary judgment,

16

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting National's motion for summary judgment and to enter a new order granting National's motion for summary adjudication on Avetisyan's claim for punitive damages, denying National's motion for summary adjudication on Avetisyan's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and denying National's motion for summary judgment. Avetisyan is to recover his costs on appeal.

SEGAL, J.*

We concur:


PERLUSS, P. J.


WOODS, J.

---

Avetisyan's challenges to the trial court's evidentiary rulings sustaining National's objections to Masters' declaration are moot.

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.